WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Sazar Dent, | No. CV-10-02673-PHX-GMS |
|---|---|
| Petitioner, | **ORDER** |
| v. | |
| Jeff B. Sessions, Attorney General of the United States, | |
| Respondent. | |

Pending before the Court are Petitioner Sazar Dent's ("Dent"), (Doc. 182), and the Respondent Jeff B. Sessions's, (Doc. 180), respective motions for summary judgment on Dent's constitutional due process claim. For the following reasons, the Court grants the Respondent's motion and denies Petitioner's motion.[1]

**BACKGROUND**

Sazar Dent was born in November, 1967 in Honduras. (Doc. 183 at 2; Doc. 181 at 2.) He was legally adopted by Roma Dent ("Ms. Dent"), a United States citizen, in September of 1981. (Doc. 183 at 2; Doc. 181 at 2.) Soon after his adoption, Dent was admitted as a lawful permanent resident and on January 18, 1982, Ms. Dent filed a Form N-402, an Application to File a Petition for Naturalization on Behalf of a Child. (Doc.

---

[1] Respondent expressly indicated in his motion that he did not desire oral argument. (Doc. 180 at 1 n.1.) Petitioner also indicated in his Response that he did not desire oral argument, (Doc. 188 at 1 n.1), nor did either party request oral argument with respect to Petitioner's cross-motion. Thus the Court rules on the motion without oral argument.

183 at 2; Doc. 181 at 2, 5.)  In 1982, applications filed in Arkansas were processed by the INS office in New Orleans as opposed to the INS office in Memphis because of the backlog in the Memphis office.  (Doc. 181 at 5; Doc. 183 at 3.)  Through 1984 INS examiners from New Orleans would travel to Fort Smith, Arkansas, to conduct interviews and court hearings on applications from the Fort Smith Area—the location nearest to Dent's residence.  (Doc. 181 at 7; Doc 183 at 3.)  They would make such "circuit" trips approximately every six months.  (*Id.*)  At his deposition, Mr. Gallmann, the government's 30(b)(6) representative, testified that after an Application to File Petition for Naturalization on Behalf of Child was filed, it took approximately 18 months for the New Orleans office to schedule an interview in Fort Smith.  (Doc. 187 at 13–14, Doc. 186 at 3–4.)  Dent challenges whether Mr. Gallmann has actual knowledge sufficient to support his testimony, (Doc. 188 at 8), and offers statistics concerning processing times two years later in other U.S. locations in an attempt to raise an issue of fact as to what the processing times were in New Orleans in 1984.  (Doc. 183 7–8.)  Dent further submits various GAO studies in support of its argument that the INS was, as an institution, deliberately indifferent to the dangers that delayed processing presented to minor applicants for citizenship who were adopted by U.S. citizen parents and whose rights to apply for citizenship were time-limited.  (*Id.* at 8–9.)

On July 20, 1983, Immigration and Naturalization Services ("INS") filed the first interview notice for Dent's childhood naturalization application, which was scheduled for August 3, 1983.  (Doc. 183 at 3; Doc. 181 at 7–8.)  Dent did not appear for his interview because he was in Honduras at the time.  (Doc. 183 at 3; Doc. 181 at 8.)  If an applicant was absent for an interview without an explanation in 1983, INS procedure was to send the applicant's file to the record room to await further contact from the applicant.  (Doc. 183 at 4; Doc. 181 at 5.)

Five months later, on about February 21, 1984, the INS processed Ms. Dent's request that the INS to reschedule the interview.  (Doc. 181 at 8; Doc. 183 at 3.)  In her request for the rescheduled interview Ms. Dent did not indicate exactly when her son

would return to the United States.² The interview was then promptly set for three weeks later, on March 13, 1984. (Doc. 183 at 3; Doc. 181 at 8–9.) Dent did not attend this interview either, as he was still in Honduras. (Doc. 183 at 4; Doc. 181 at 9.)

Sometime following Dent's second missed interview, the INS office in Memphis reassumed responsibility for the circuit interviews in Fort Smith, Arkansas. (Doc. 181 at 7, Doc. 183 at 3.) Ms. Dent received what appears to be a response to a contact she made to the Memphis INS office. (Doc. 183 at 5.) In that response the unidentified INS agent indicated:

> Dear Ms. Dent,
> So good to hear from you. Am unable to locate Sazar records in our office as I do not have his Alien card number. Also include Sazar complete name and date of birth.
> We will do all we can to get him his citizenship.

(*Id.*; Doc. 182-2 at 33.) In response and on the same form, Ms. Dent has apparently handwritten:

> Thank you so much.
> Resident Alien number A37082657
> NOL IR4
> Cesar Auguste Jimenez Mendez
> adopted name
> Sazar David Dent.
> (8-18-1981)
> (Is 16 will be 17 Nov. 15).

(Doc. 182-2 at 33; Doc. 181 at 9.) Ms. Dent returned this inquiry with her responses on August 27, 1984 to the INS office in Memphis. (Doc. 182-2 at 25.) At no point did Ms. Dent make a specific, written request to expedite Dent's childhood application. In apparent response to the INS's request for Sazar's birth date, Ms. Dent stated that he "[i]s 16 will be 17 Nov. 15." (Doc. 182-2 at 33.)

/ / /

---

² Although Mr. Dent notes that his mother inquired as to whether an interview could be scheduled in Honduras and received no response, he does not contest the government's assertion that no immigration interviews could be scheduled in Honduras during this time period. (Doc. 183 at 3.)

- 3 -

There is no evidence that any interviews were subsequently scheduled for Dent on any circuit rides to Fort Smith prior to his eighteenth birthday.  (Doc. 183 at 5.)  The summer before his eighteenth birthday, on June 10, 1985, Janice Ainsworth, an INS clerk, noted on Mr. Dent's file that "Joan" from the U.S. Court Clerk's Office in Fort Smith had called and indicated that Dent "had been in a lot of trouble."  (Doc. 183 at 6; Doc. 181 at 10.)  Specifically, Dent had run away from several boys' homes there, and "They (the authorities)" were hoping they could deport him.  (*Id.*)  Ainsworth advised "Joan" that Dent was a lawful permanent resident, having been adopted by a U.S. citizen.  (Doc. 181 at 10; Doc. 183 at 6.)

Once Dent turned eighteen, he could no longer obtain citizenship through a Form N-402.  (Doc. 183 at 6; Doc. 181 at 11.)  However, he could obtain citizenship as an adult on February 21, 1986, because at that point he would have been a legal resident for five years.  (Doc. 183 at 7; Doc. 181 at 11.)  The INS scheduled him for an interview on February 25, 1986.  (Doc. 183 at 6; Doc. 181 at 11.)  Once again, Dent did not appear for the interview.  (Doc. 183 at 6; Doc. 181 at 11.)  Dent appeared a day late, on February 26, 1986, and the INS "squeezed" him in for an interview.  (Doc. 183 at 6; Doc. 181 at 11.) On the date of that interview, Roma Dent's Form N-402 application was noted as "non-filed," which would have required Dent's consent, (Doc 181 at 12), and he filed a Form N-400 to apply for naturalization as an adult.  (Doc. 183 at 6; Doc. 181 at 12.)[3]  The INS immediately approved that application.  (Doc. 181 at 12–13; Doc. 183 at 10.)  He listed his Arkansas address on this application.  (Doc. 183 at 10; Doc. 181 at 12.)

On June 6, 1986, the INS issued a notice of Final Naturalization Hearing to Dent, and scheduled his hearing in Fort Smith, Arkansas on June 25, 1986.  (Doc. 183 at 10; Doc. 181 at 13.)  This notice was mailed to an address in Kansas, to which Dent had, in the interim, requested that such notices be sent.  (Doc. 183 at 10; Doc. 181 at 13.)  Dent responded to the INS notice however, by indicating that he had moved to Gridley,

---

[3] In 2008, when Sazar Dent returned to the United States after his initial deportation, Roma Dent's Form N-402 application was unnecessarily adjudicated as denied.  (Doc. 181 at 21–22.)

- 4 -

California. (Doc. 183 at 10; Doc. 181 at 13.) Dent inquired how he could change his naturalization hearing to California. (Doc. 183 at 10; Doc. 181 at 13–14.) The INS sent an explanation of the procedure Dent needed to follow to move his naturalization hearing to California to Dent's Gridley, California address. (Doc. 182 at 6.) Dent offers no evidence that he ever sent the appropriate fees and forms to the district court to accomplish this. (Doc. 183 at 10; Doc. 181 at 13.) He did not attend the hearing held on June 25, 1986 in Fort Smith, Arkansas. (Doc. 181 at 14.) Very shortly after he moved to California Dent moved again, this time to Dayton, Ohio. (Doc. 181 at 17.) Dent moved to several different addresses in Dayton, Ohio, but he never provided the government with his new address in Ohio, nor did he thereafter keep the government informed of his whereabouts, (Doc. 187 at 21; Doc. 192 at 7; Doc. 195 at 10), nor does he provide any evidence that he made provisions for his mail to be forwarded from Gridley. (Doc. 181 at 17.) The INS scheduled a second hearing in Fort Smith for December 17, 1986, which Dent did not attend. (Doc. 183 at 11; Doc. 181 at 14, 15.) Notice of this second hearing was sent in November 1986 to his last address in Gridley, California. (Doc. 181 at 14; Doc. 183 at 11.) The envelope was a "picture envelope" with a clear window to display the Gridley address which was printed on the letter/notice. (Doc. 187 at 19.) The letter was returned to the INS with a "moved" notation on the envelope and a post office stamp indicating "address not known." (*Id.* at 20.)[4] According to the government, Dent missed two additional hearings that were scheduled for him in 1987. (Doc. 181 at 15.) Nevertheless, the government file does not provide confirmation that the INS made any attempt to provide Dent notice of such hearings. (Doc. 183 at 11; Doc. 181 at 15.)

---

[4] Petitioner asserts that the use of such a clear window envelope raises an issue of fact as to whether the window in the envelope actually demonstrated the Gridley address that is included on the notice. (Doc. 183 at 11.) Such speculation by counsel is insufficient to raise a material issue of fact in the absence of any evidence supporting the speculation. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (explaining that there is no "genuine issue [of fact] where the only evidence presented is uncorroborated and self-serving testimony." (internal quotations and citations omitted)).

Finally, in November 1988, the INS sent Form N-425, Notice for Proposed Recommendation of Denial of Petition for Naturalization, to Dent's original Kansas City address, which is the address that remained on file. (Doc. 181 at 18; Doc. 183 at 11–12.) The notice was returned to sender. (Doc. 183 at 12; Doc. 181 at 16.) The hearing was nevertheless held and Dent's application was denied for non-prosecution. (Doc. 181 at 18; Doc. 183 at 13.) INS's policy at the time required it "to make reasonable efforts" to locate an applicant if a Form N-425 was returned as undeliverable, and Mr. Gallmann acknowledged that under the circumstances that would have included mailing the Form N-425 notice to the Gridley, California as well as the Kansas City address for Mr. Dent. (Doc. 183 at 12; Doc. 181 at 16.)

In December, 2003, Dent was convicted of possession of narcotics and third degree escape. (Doc. 183 at 13.) In response to the conviction for third degree escape, the Department of Homeland Security began removal proceedings against Dent. Dent was removed from the United States on September 12, 2005. (Doc. 183 at 14; Doc. 181 at 20.) He subsequently filed suit against the government on the grounds that the INS's treatment of his naturalization applications violated his due process rights.

## DISCUSSION

### I.     Legal Standard

An individual's constitutional right to procedural due process is violated if the INS "arbitrarily and intentionally obstructed his application" for citizenship or if it was "deliberately indifferent to whether his application was processed." *Brown v. Holder*, 763 F.3d 1141, 1150 (9th Cir. 2014) ("*Brown I*"). To establish a prima facie case, the claimant must put forth sufficient evidence for a reasonable jury to conclude that the INS acted intentionally or with deliberate indifference toward his application. *See Brown v. Lynch*, 831 F.3d 1146, 1150 (9th Cir. 2016) ("*Brown II*") (affirming summary judgment on behalf of the INS because the claimant "had not established that the conduct of the INS amounted to either arbitrary and intentional obstruction or deliberate indifference under those standards."). In addition to demonstrating the INS's intent, a plaintiff must

1   also "show prejudice, which means that the outcome of the proceeding may have been
2   affected by the alleged violation." *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir.
3   2005) (internal citation and quotation omitted).

4   The Court grants summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment by "asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to specific aspects of the record rather than relying on mere allegations. Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (internal quotation and citation omitted).

Where the parties have filed cross-motions for summary judgment, the Court "evaluate[s] each motion independently, 'giving the nonmoving party in each instance the benefit of all reasonable inferences.' " *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2015) (quoting *ACLU v. City of Las Vegas,* 333 F.3d 1092, 1097 (9th Cir. 2003)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Analysis

For a petitioner to succeed on a constitutional due process claim, he must demonstrate that the INS "arbitrarily and intentionally obstructed his application" for citizenship or that the INS was "deliberately indifferent to whether his application was processed." *Brown I*, 763 F.3d at 1150. This is not a low bar, as even a showing of gross negligence is insufficient to show the requisite culpability to prove such a constitutional violation. *Id.* at 1150 n. 5. Likewise, the "mere failure of an agency to follow its regulations is not a violation of due process." *Id.* at 1148.

The Ninth Circuit recently clarified that "deliberate indifference requires (1) a showing of an objectively substantial risk of harm; and (2) a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and (a) the official actually drew that inference or (b) that a reasonable official would have been compelled to draw that inference." *Brown II*, 831 F.3d at 1150 (internal quotations and citations omitted). If a petitioner cannot illustrate that the INS acted with at least deliberate indifference toward his application, then his claim must fail as a matter of law. *Id.*

### A. The Government's Motion for Summary Judgment is Granted.

Even taking all facts in the light most favorable to Dent, he fails to present evidence sufficient to raise a prima facie case that the INS arbitrarily and intentionally obstructed or acted with deliberate indifference toward his application, and thus the INS's Motion for Summary Judgment is granted.

#### i. Dent's Childhood Application (Form N-402)

Dent argues that the INS employees handling his application were deliberately indifferent to his childhood application because 1) there was a year and a half delay between Dent's childhood application and the scheduling of the initial interview and 2) the INS failed to schedule an interview prior to Dent's eighteenth birthday despite receiving notice of his pending seventeenth birthday. Dent further alleges that a note in

his file relating to his behavioral problems and indicating some authorities desired to deport him indicates that the INS had a motive for its indifference toward his application. (Doc. 182 at 18.)

The first basis on which Dent argues that he has raised issues of fact as to the INS's deliberate indifference is its year and a half delay in initially scheduling his interview pursuant to his Form N-402 application. Nevertheless, even if this Court were to assume that Dent has adequately contested Mr. Gallmann's testimony that in the early 1980s the average time period between filing an N-402 petition and having an initial interview scheduled was eighteen months, (Doc. 181 at 6), Dent raises no fact sufficient to suggest that the INS was aware that Dent was in Honduras when it scheduled the first interview. Further, Dent does not contest the INS's factual assertions that had Dent attended either his first or his second interview, he would have been granted citizenship status. (Doc. 181 at 16.) Thus, even assuming there was an abnormally long delay in scheduling either Dent's first and or his second interview, it is not sufficient to raise a prima facie case of intentional obstruction or deliberate indifference because, had he attended either scheduled interview, he would have received his citizenship.

Further, Dent was fifteen years old when they scheduled his first interview and sixteen years old when they scheduled his second interview. There is no evidence that "it would have been reasonable for officials to assume that . . . a necessary or even likely outcome of the decision not to schedule" his first interview until he reached age fifteen, would be that Dent would age out of his eligibility by turning eighteen before his citizenship was granted. *Brown II*, 831 F.3d at 1151. In August of 1988 the INS adopted a policy that provided for the adjudication of a childhood application within 60 days of its filing. This was, however, years after Dent's childhood application was withdrawn. (Doc. 183 at 7; Doc 187 at 6–7). Furthermore, even if the policy had been in place at the time, the "mere failure of an agency to follow its regulations is not a violation of due process." *Brown I*, 763 F.3d at 1148.

Dent also alleges that the INS's approach to automation, and the subsequent delay

1 it caused in scheduling his initial interview for his childhood application, constituted
2 deliberate indifference. In support of this claim, Dent presented evidence that in 1979 the
3 United States General Accounting Office ("GAO") as well as the Department of Justice
4 voiced concerns over INS's plan to automate its district offices. (Doc. 183 at 8.)
5 However, Dent has not indicated that the INS's specific policymakers were aware that
6 their failure to automate INS's systems had the potential to be problematic, much less
7 that it would specifically cause childhood applications to age out. (Doc. 180 at 15.) Such
8 evidence is necessary to illustrate a prima facie case based on an institution's policy, as
9 Dent needs to establish that INS "policymakers [were] on actual or constructive notice
10 that a *particular* omission" on their part was causing "employees to violate citizens'
11 constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The fact that other
12 government agencies identified general problems with the INS's approach to automation
13 does not satisfy this requirement, and thus Dent has failed to cite to specific facts in the
14 record establishing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c).[5]

15 Such facts do not individually or in conjunction with other facts give rise to an
16 inference of intentional obstruction or deliberate indifference to the processing of Dent's
17 application. In the absence of such evidence, the factual basis is not "such that a
18 reasonable jury could return a verdict for the nonmoving party." *Villiarimo*, 281 F.3d at
19 1061 (internal quotation and citation omitted).

20 Dent's second claim asserts that the INS's failure to schedule an interview
21 between August 1984 and November 1985, Dent's eighteenth birthday, constituted
22 deliberate indifference, particularly in light of the fact that in response to an INS request
23 for Mr. Dent's information, including his birthdate, Ms. Dent had advised an INS agent in
24 August of 1984 that her son would be turning seventeen on November 15 of that year.
25 (Doc. 182 at 15.) Even in light of that communication, the INS failed to schedule another

---

[5] Dent also attempts to avoid summary judgment by noting that in 1986, the GAO linked the lack of automation in INS offices to delays in processing naturalization applications. (Doc. 199 at 11.) However, this notation strengthens the case for the government, as this link was not made until 1986, the year after Dent turned eighteen and became ineligible for a childhood application.

- 10 -

1  interview for Dent prior to his eighteenth birthday in November of 1985.  (*Id.* at 16.)

2  Dent does not challenge the INS's assertion that one at risk of aging out could
3  request expedited treatment, but Ms. Dent's request does not amount to a request for an
4  expedited application.  (Doc. 186 at 20.)  As in *Brown II*, the evidence presented by Dent
5  may demonstrate that the officials directly in charge of Ms. Dent's application "were
6  plausibly aware of the risk posed" by failing to expedite Dent's interview process, but
7  Dent "has not shown either that those individuals possessed the authority to expedite
8  ceremonies or that anyone who did have such authority had been made aware of his
9  situation." *Brown II*, 831 F.3d at 1151.  Given these shortcomings, Dent has failed to
10 establish a prima facie case and has not presented any "disputes over facts that might
11 affect the outcome of the suit," and therefore the government is entitled to summary
12 judgment on this allegation. *Anderson*, 477 U.S. at 248.

13 The subsequent note in Dent's file—other than indicating that he was running
14 away from various boys' homes—does not sufficiently raise issues of fact as to the INS's
15 deliberate indifference to or obstruction of Dent's citizenship application.  Nothing in the
16 note indicates that anyone at the INS desired to deport Dent or to otherwise obstruct his
17 application process.  The Note indicates that Ms. Ainsworth told "Joan" that Dent had
18 been adopted by a U.S. citizen and was thus a lawful permanent resident.  (Doc. 181 at 9;
19 Doc. 183 at 6.)  Nor does Dent challenge the INS's factual statement that it took no
20 action to deport him.  Counsel's speculation about the note that is unsupported by any
21 admissible evidence is insufficient to raise an issue of material fact sufficient to defeat a
22 motion for summary judgment. *See Villiarimo*, 281 F.3d at 1061 (There is no "genuine
23 issue [of fact] where the only evidence presented is uncorroborated and self-serving
24 testimony." (internal quotations and citations omitted)).

25           **ii.**     **Dent's Adult Naturalization Application (Form N-400)**

26 Dent also asserts that the INS was at least deliberately indifferent to whether his
27 adult application for naturalization was processed.  By the time Dent appeared for an
28 interview with the INS, he was already eighteen and thus no longer qualified to apply

- 11 -

through a Form N-402. (Doc. 182 at 5.) Despite the fact that Dent appeared on the wrong day for his interview, the INS assisted him in filing out an adult application for naturalization, or a Form N-400, and held his initial interview for his application the same day. (Doc. 182 at 5.) However, Dent asserts that the INS violated his due process rights during this application process by acting with at least deliberate indifference to whether his application was processed when the INS 1) did not give him proper notice of three of the four interview hearings and 2) sent the Final Notice of Proposed Recommendation of Denial of Petition to the wrong address and failed to attempt to locate Dent before dismissing his application. (Doc. 182.)

### a. Dent Cannot Show Deliberate Indifference or Intentional Obstruction

Dent's failure to receive the INS's notices does not raise an issue of material fact as to whether the INS was deliberately indifferent or intentionally obstructive in processing Dent's application when Dent himself engaged in at least two moves and did not keep the INS updated as to his appropriate address. Dent initially listed his childhood Arkansas home as his address on his Form N-400, but shortly thereafter he moved to Kansas City. (Doc. 183 at 10.) He timely informed the INS of the move, and requested for his mail to be sent to the Kansas City address. (*Id.*) The INS mailed the notice of his June 25, 1986 hearing to this address. (*Id.*) In the meantime Dent had moved to California, and inquired how to move his case to California. (*Id.* at 10.) Dent's June 25, 1986 hearing took place, but Dent did not appear. (Doc. 181 at 14.)

The INS responded to Dent concerning the steps he needed to take to change his hearing to California. (*Id.*) Dent provides no evidence that he ever took the necessary steps to change his hearing to California. The INS scheduled Dent for another naturalization hearing on December 17, 1986 in Fort Smith, Arkansas, and sent notice of that hearing to Dent's last known address in Gridley, California. (Doc. 181 at 14–15.) But, by this time, Dent had moved to Ohio without informing INS of the move. (Doc. 181 at 14, 17.) The notice for the December hearing came back as undeliverable. (Doc. 181

- 12 -

at 15.) The envelope is stamped with messages such as "return to sender" and "attempted- not known." (*Id.*) The government asserts that the INS held two additional hearings for Dent, but it cannot produce evidence of any the notices sent for these hearings, and Dent testified that he never received any notices for these hearings. (Doc. 183 at 11; Doc. 181 at 15–16.) Even taking the facts "in a light most favorable to the non-moving party," Dent has not presented any evidence that failure to mail the notices amounts to intentional obstruction.

Likewise, the INS's delivery of the Notice of Proposed Recommendation of Denial of Petition for Naturalization to the wrong address did not amount to deliberate indifference, nor did its failure to locate Dent prior to proceeding with the final hearing. In *Brown I*, the Ninth Circuit explained that the government's mistakes, such as giving incorrect immigration advice, do not establish deliberate indifference without evidence of some indication of affirmative intent. *Brown I,* 763 F.3d at 1149–50. Otherwise, the mistakes may be grounds for gross negligence, but that is not sufficient to demonstrate deliberate indifference. *Brown I,* 763 F.3d at 1152 n.5. Such is the case here. Instead of mailing the notice to California, which was the most recent address for Dent in his file, the INS mailed it to his former home in Kansas. (Doc. 183 at 12.) By this time, however, Dent had moved to Ohio without providing the INS with his new address. (Doc. 181 at 17.) Past mailings to his California address had been returned to sender. The Naturalization Examiner's Guide states that if such a notice is returned to the INS undelivered, then "reasonable efforts should be made to locate the petitioner," but it does not appear that the INS actually mailed copies of the notice to any of Dent's other former homes. (Doc. 183 at 12.) Furthermore, an INS official testified that INS's normal procedure when a petitioner cannot be located is to put the file on hold and not proceed to court to dismiss the application. (Doc. 182 at 22.) However, "mere failure of an agency to follow its regulations [let alone merely its normal practice] is not a violation of due process," and none of the evidence indicates that this failure was the result of anything more than negligence on the part of INS. *Brown I*, 763 F.3d at 1148. This is especially

the case when the INS had no way of contacting Dent. Indeed, as discussed in *Brown I*, even "clear error" by the agency does not provide grounds for relief. *Brown I*, 763 F.3d at 1149–50. Over the course of two years, Dent knowingly failed to attend at least two naturalization hearings. The record does not reflect a single instance where he reached out to the INS to inquire as to his application status and he does not contest that he did not keep the INS informed of his whereabouts as he moved about the country. While the evidence suggests that both Dent and the INS may have acted negligently at various points throughout this process, nothing in the evidence is sufficient to raise a material question of fact as to whether the INS acted with or was motivated by animus or malicious intent.

        **b.**   **Dent Cannot Demonstrate Prejudice**

    To succeed on his due process claim, Dent must also establish that he was prejudiced by the INS's alleged failings. *See Gonzaga-Ortega v. Holder*, 736 F.3d 795, 804 (9th Cir. 2013) (explaining that for an individual to succeed on a due process claim based on immigration proceedings, he "must demonstrate error and substantial prejudice to prevail"); *see also Brown I*, 763 F.3d at 1149 ("Brown may still be able to establish a claim to citizenship if he can show that the INS's mishandling of applications resulted in a violation of his constitutional right to due process.") "A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings." *Lata v. INS.*, 204 F.3d 1241, 1246 (9th Cir. 2000). Although a plaintiff need not show prejudice with absolute certainty, prejudice is not presumed to exist, and a claimant must show some indication that "*may have been affected* by the alleged violation." *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1076 (9th Cir. 2005) (emphasis in original); *see Lata*, 204 F.3d at 1246 (explaining that a court "will not simply presume prejudice," and an individual that "cannot show a scintilla of prejudice" is not entitled to relief under the due process clause).

    Dent cannot establish prejudice, and thus the government is entitled to summary judgment on his adult naturalization claim. Dent moved to Ohio in 1986, and he never

provided the government with his new address. (Doc. 181 at 17; Doc. 195 at 10.) Even if the INS mailed the Notice of Proposed Recommendation of Denial of Petition for Naturalization to all of Dent's former addressees, as Dent contends it should have done, it would not have made any difference. Dent provides no evidence sufficient to suggest that had the INS mailed notices to any or all of Dent's former addresses he would have received one of those notices. Thus even if the notice was sent to each of his former addresses, he still would not have received it. As in *Lata*, Dent "cannot show a scintilla of prejudice," and thus the government is entitled to summary judgment on this claim. *Lata*, 204 F.3d at 1246.

## CONCLUSION

Because Dent is unable to present facts demonstrating that the INS intentionally obstructed or acted with deliberate indifference to his applications, the Respondent's Motion for Summary Judgment is granted. The Petitioner's Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment, (Doc. 180), is **GRANTED**

**IT IS FURTHER ORDERED** that the Petitioner's Motion for Summary Judgment, (Doc. 182), is **DENIED.** The Clerk of Court is directed to enter judgment accordingly.

Dated this 17th day of March, 2017.

Honorable G. Murray Snow
United States District Judge